**O**
**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| KAVIKA TAITAI; ERIK BEAR,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF PORT HUENEME; CYNTHIA HAAS; CARMEN NICHOLS; and DOES 1–50, inclusive,<br><br>　　　　　Defendants. | Case № 2:15-cv-04106-ODW (AJWx)<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [15] AND DENYING DEFENDANTS' MOTION TO STRIKE [16]** |

## I. INTRODUCTION

This is an employment retaliation case filed by Plaintiffs Kavika Taitai and Erik Bear against Defendants City of Port Hueneme ("City"), Cynthia Haas, and Carmen Nichols.  Plaintiffs allege that Defendants retaliated against them for applying for and receiving unemployment benefits.  Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim and move to strike various allegations in the Complaint.  For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiffs' claims under 42 U.S.C. § 1983, *sua sponte* dismisses Plaintiffs' remaining state law claims pursuant to 28 U.S.C. § 1367, and **DENIES**

Defendants' Motion to Strike as moot. (ECF Nos. 15, 16.)[1]

## II. FACTUAL BACKGROUND

Plaintiffs Taitai and Bear have been employed by the City as lifeguards for fourteen years and thirty years, respectively. (Compl. ¶¶ 23, 24.) The City hires most lifeguards on a seasonal basis, and the "lifeguard season" generally runs from approximately May through September of each year. (*Id.* ¶ 25.) During the offseason, lifeguards that are otherwise employed during the summer months often collect unemployment benefits. (*Id.* ¶ 30.) However, during the 2013–14 offseason, Defendants Haas and Nichols—who were the City Manager and Deputy City Manager, respectively—allegedly "began a concerted and sustained campaign" of harassment, discrimination, and retaliation against lifeguards who had sought or were likely to seek unemployment benefits. (*Id.* ¶¶ 15, 16, 32.)

### A. Plaintiff Taitai

Following the 2013 season, Plaintiff Taitai sought and obtained information from the California Employment Development Department ("EDD") concerning his eligibility for unemployment benefits, and also applied for and received such benefits. (*Id.* ¶ 31.) In April 2014, Taitai applied for rehire for the 2014 lifeguard season. (*Id.* ¶ 36.) Soon after, Taitai met with a City employee to discuss his application, including his concern that he might not be rehired because he obtained unemployment benefits during the recent offseason. (*Id.*) The employee declined to discuss if or how that might affect his application. (*Id.*) Taitai nevertheless pressed for more information regarding the City's "actions and plans in relation to the upcoming 2014 season," but was rebuffed. (*Id.* ¶ 37.) Shortly thereafter, several other lifeguards told Taitai that they heard that the City "resented" the inquiries he made during the meeting. (*Id.*)

Approximately one month later, Taitai received a letter rejecting his

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); L.R. 7-15.

2

application. (*Id.* ¶¶ 38.) Taitai spoke directly with Defendant Nichols and asked why his application was rejected. (*Id.* ¶ 39.) Defendant Nichols allegedly admitted that his application was rejected because he received unemployment benefits during the most recent offseason and prior offseasons. (*Id.*)

**B.  Plaintiff Bear**

Like Taitai, Plaintiff Bear sought and obtained information from the EDD concerning his eligibility for unemployment benefits, and also applied for and received such benefits during the 2013–14 offseason. (*Id.* ¶ 31.) In the months leading up to the 2014 season, Plaintiff Bear also met with Defendant Nichols. (*Id.* ¶ 41.) Nichols allegedly complained to Bear about the cost to the City of lifeguards collecting unemployment benefits during the offseason, and threatened not to rehire Bear unless he agreed not to seek such benefits in the future. (*Id.* ¶¶ 41–42.) Bear reluctantly agreed. (*Id.* ¶ 43.)

**C.  Complaint**

On June 1, 2015, Plaintiffs filed their Complaint, which asserts the following claims: (1) violation of the First Amendment under 42 U.S.C. § 1983; (2) violation of California Labor Code section 98.6; (3) violation of California Labor Code section 1102.5; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; and (6) declaratory relief. (ECF No. 1.) On October 12, 2015, Defendants moved to dismiss the Complaint under Rule 12(b)(6), and moved to strike portions of the Complaint under Rule 12(f). (ECF Nos. 15, 16.) Plaintiffs timely opposed both Motions, and Defendants timely replied. (ECF Nos. 20, 22, 23, 24.) Those Motions are now before the Court for consideration.

## III.  LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To

survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. First Amendment Claims

Defendants argue that Plaintiffs fail to state a First Amendment retaliation claim because their speech was not a matter of public concern. (Mot. at 6–9.) Plaintiffs counter that because "the right to seek and obtain statutorily mandated unemployment benefits . . . free from retaliation and discrimination[] is a matter of public concern," they have adequately stated a claim under the First Amendment. (Opp'n at 6–8.)

Plaintiffs are incorrect.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987). However, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (citation omitted). Thus, an employee's speech qualifies for protection only if it "'constitut[es] speech on a matter of public concern.'" *Rankin*, 483 U.S. at 384 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). There is no "precise definition" of what constitutes a matter of "public concern." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). "It is clear, however, that the essential question is whether the speech addressed matters of 'public' as opposed to 'personal' interest." *Id.* Courts evaluate the nature of the speech by looking at "'the content, form, and context of a given statement, as revealed by the whole record.'" *Rankin*, 483 U.S. at 384–85 (citation omitted); *see also Desrochers*, 572 F.3d at 709 (noting that the Ninth Circuit "relie[s] on a generalized analysis of the nature of the speech" under the three *Connick/Rankin* factors). "The plaintiffs bear the burden of showing that their speech addressed an issue of public concern." *Desrochers*, 572 F.3d at 709 (brackets and internal quotation marks omitted).

The content of a statement reflects a matter of public concern when the speech involves "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Id.* at 710 (citations omitted). "On the other hand, speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Id.* (citations omitted). The form of a statement reflects a matter of public concern when the speech is made in a public forum as opposed to a private conversation. *Id.* at 714. Finally, the context of a statement

5

reflects a matter of public concern when the speech is motivated by a desire to "'bring to light actual or potential wrongdoing or breach of public trust.'" *Id.* at 715 (quoting *Connick*, 418 U.S. at 148). Content is "the greatest single factor in the *Connick* inquiry." *Id.* at 710. However, "[i]n a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Johnson v. Multnomah Cnty., Or.*, 48 F.3d 420, 425 (9th Cir. 1995).

### 1. Plaintiff Taitai

Plaintiff Taitai alleges that he was not rehired for the 2014 season because: (1) he requested information from the EDD regarding his eligibility for unemployment benefits; (2) he applied for unemployment benefits; (3) he questioned a City employee about the impact his receipt of benefits would have on his rehire application; and (4) he questioned Defendant Nichols regarding the reason his application was denied. (Compl. ¶ 58.) Plaintiffs contend that these acts constitute speech on a matter of public concern, and thus support a First Amendment retaliation claim. The Court addresses each basis in turn.

#### i. Requesting Information on Eligibility for Benefits

It is readily apparent that requesting information regarding one's personal eligibility for unemployment benefits does not constitute speech on a matter of public concern. Plaintiffs do not identify what specific statements (if any) were made during these "requests," but it seems beyond reasonable dispute that any speech germane to such a request would not contain information that would enable the public to evaluate general government operations. As to the form of the speech, there is no suggestion that the requests were made in a public forum; indeed, the Court cannot even conceive how such a request could be made in a public manner. And as to the context of the speech, there is no indication that the requests were made for the purpose of bringing

to light any wrongdoing by the City; rather, the purpose was to determine Taitai's own eligibility for unemployment benefits for the 2013–14 offseason. The Court therefore does not hesitate to conclude that this "speech" does not involve a matter of public concern.

### ii. Applying for Unemployment Benefits

For much the same reasons, Taitai's application for unemployment benefits is not speech on a matter of public concern. Disclosing personal information to the EDD on a private form for the purpose of obtaining personal unemployment benefits does not enhance public discourse on government affairs, and thus this "speech" is not entitled to First Amendment protection.

### iii. Conversation with the City Employee

While Taitai's conversation with the City employee regarding his rehire application is a closer call, the Court still finds that this speech does not involve a matter of public concern.

The content of the speech could be reasonably interpreted as affecting issues of both public and private concern. On the one hand, discussing the impact of Taitai's personal receipt of unemployment benefits on his personal application for rehire would appear to be a matter of purely personal concern that does not warrant protection. However, the topics Taitai discussed (or attempted to discuss) during the conversation could have an impact beyond his personal application. A substantial number of City lifeguards appear to go through this same rehiring cycle each year, and it is common (according to the Complaint) for most or all such lifeguards to apply for and receive unemployment benefits during the offseason. If lifeguards are indeed entitled to receive unemployment benefits during the offseason without being punished for doing so, the answers sought by Taitai as to his personal application potentially bear on the public's evaluation of the City's general hiring practices. *See McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (holding that the fact that the speech concerns "the rate of compensation for members of the city's police

force and, more generally, with the working relationship between the police union and elected city officials" weighs in favor of a finding that the speech involves a matter of public concern). Much the same can be said about his subsequent requests for information on the City's general hiring practices for the 2014 lifeguard season. *Id.*

That said, the Court is wary of considering the hypothetical public impact of an employee grievance. In some sense *all* employee grievances potentially implicate an agency's general labor practices, but not every (or even most) such grievances are matters of public concern. Here, there is no suggestion that Taitai's personal application actually became a lightning rod for broader public dissatisfaction with the City's hiring practices.[2] Thus, the Court finds that the content factor is either neutral or points cautiously to the conclusion that the speech was one of public concern.

The form of the speech, however, weighs decidedly against such a conclusion. "[A] limited audience weigh[s] against [plaintiff's] claim of protected speech." *Roe v. City & Cnty. of S.F.*, 109 F.3d 578, 585 (9th Cir. 1997). In *Turner v. City & Cnty. of S.F.*, 788 F.3d 1206 (9th Cir. 2015), the Ninth Circuit held that this factor weighed against the claim of protected speech where the plaintiff "voiced his grievances internally—at union meetings, to his supervisor, and to Human Resources—and they were specifically related to the conditions of his employment. [Plaintiff] could have pursued a complaint with the San Francisco Civil Service Commission, gone to the Board of Supervisors for the City and County of San Francisco, gone to the press, or otherwise attempted to air his concerns in a public forum [but h]e did not do so." *Id.* at 1211; *see also Desrochers*, 572 F.3d at 714–15. Here, Taitai engaged in a one-on-one conversation with a City employee, which is an even more private setting than in *Turner*.[3] Taitai's discussion of the conversation with other lifeguards also does not

---

[2] The alleged discussion of the City's hiring practices at the city council meetings did not appear to stem from (or otherwise involve) Taitai's personal application. (Compl. ¶¶ 47–51.)

[3] Every case cited by Plaintiffs involves speech made in a significantly more public forum that Taitai's speech. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1053 (9th Cir. 2013) (plaintiff led a no-confidence vote of the police officers' union against the Chief of Police); *McKinley*, 705 F.2d at 1112 (plaintiff's speech occurred at two meetings of the city council and on television); *Rode*

reach the level of publicity required by *Turner*, and those discussions were at any rate social conversations among friends rather than an effort by Taitai to disseminate the conversation to the general public.

Finally, the context of the speech also weighs against the claim of protected speech. Even Plaintiffs concede that the discussion was motivated by Taitai's desire to gather information concerning his personal application, and was not done to seek information on the City's general hiring practices for the purpose of disseminating the information to the public. (*See* Compl. ¶ 36 ("Plaintiff Taitai met with City administrative services coordinator, Cammeo Jupp, and inquired whether there were any issues associated with his resuming work, including because he had sought and received unemployment benefits following the 2013 lifeguard season.").)

The Court finds that the foregoing factors tip against a finding that the speech was a matter of public concern. The Ninth Circuit has repeatedly held that where the content of the speech is only marginally related to issues of public concern but the form and context make clear that the statements were motivated by private concerns, no First Amendment protection will lie. *See Turner*, 788 F.3d at 1211; *Johnson*, 48 F.3d at 425. Here, while Taitai questioned the City employee on several topics that could possibly have an impact on the public's perception of the City's unscrupulous hiring practices, it is clear that the conversation was motivated solely by Taitai's interest in his personal rehire application. This is insufficient to make out a First Amendment retaliation claim.

### iv. Conversation with Defendant Nichols

Taitai's conversation with Defendant Nichols cannot form the basis of a First Amendment retaliation claim for an entirely different reason. The allegedly retaliatory conduct—i.e., the denial of Taitai's application for rehire—occurred *prior*

---

*v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988) (plaintiff participated in an interview with a news reporter).

to this conversation, and thus could not have been caused by any statements made by Taitai during the conversation. *See Desrochers*, 572 F.3d at 709 (plaintiff must show that the "protected speech was a substantial or motivating factor in the adverse employment action").

### 2. Plaintiff Bear

Plaintiff Bear similarly alleges that he was forced to forgo unemployment benefits that he was otherwise entitled to receive because: (1) he requested information from the EDD regarding his eligibility for unemployment benefits; (2) he applied for unemployment benefits; and (3) he agreed during his conversation with Defendant Nichols not to apply for unemployment benefits in the upcoming offseason. (Compl. ¶ 58.) The Court also finds none of these bases adequate to support a First Amendment retaliation claim.

For the reasons discussed above, neither requesting information regarding unemployment benefits nor applying for such benefits constitutes protected employee speech. In addition, Bear's conversation with Nichols is not causally connected to the complained-of retaliation. The allegedly retaliatory conduct—i.e., Nichols requesting that Bear forgo applying for unemployment benefits during the offseason—precedes Bear's speech—i.e., Bear's agreeing to that request. If the retaliatory conduct precedes the speech, the speech cannot be the motivating factor behind the retaliation. *See Desrochers*, 572 F.3d at 709. Bear's First Amendment retaliation claim thus fails.

### 3. Leave to Amend

None of the theories alleged could be amended to state a valid claim for First Amendment retaliation. Requesting information regarding unemployment benefits and applying for such benefits is clearly not a matter of public concern, and the Court does not see how any new allegations could revive this theory of liability. Moreover, Taitai and Bear's respective conversations with Nichols are not causally connected to the complained-of retaliation, and no new allegations could change this.

Whether Taitai's theory of retaliation based on his conversation with the City

employee could be amended to state a claim is again a close call, but the Court finds that no new and *consistent* facts could be alleged to make this a plausible theory of recovery. *See Schreiber Distrib. Co.*, 806 F.2d at 1401. Plaintiffs concede that Taitai's motivation in engaging in this conversation was to shed light on his personal employment application. (Compl. ¶ 36.) Plaintiffs also concede that this was a private, one-on-one conversation with a City employee, and thus not made in anything approaching a public forum. (*Id.*) These facts are determinative of the private (versus public) nature of the speech, and thus amendment cannot save Taitai's claim.

### B.   State Law Claims

Plaintiffs' § 1983 claims are the only ones over which the Court had original jurisdiction.[4] "The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed the § 1983 claims without leave to amend, the Court exercises its discretion to dismiss Plaintiffs' state law claims without prejudice. *See San Pedro Hotel Co. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4]   To the extent the claim for declaratory relief is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, it is axiomatic that the Act "does not itself confer federal subject matter jurisdiction." *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).

## V. CONCLUSION

For the reasons discussed above, the Court (1) **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiffs' § 1983 claims without leave to amend (ECF No. 15), (2) *sua sponte* dismisses Plaintiffs' remaining state law claims without prejudice pursuant to 28 U.S.C. § 1367, and (3) **DENIES** as moot and without prejudice Defendants' Motion to Strike (ECF No. 16). The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

December 7, 2015

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**